**BETHUNE PLAZA, INC.,**
**Plaintiff–Appellee/Cross–Appellant,**

**Illinois Council on Long–Term Care,**
**Intervening Plaintiff–Appellee,**

v.

**John LUMPKIN, Associate Director of the Illinois Department of Public Health, et al., Defendants–Appellants/Cross–Appellees.**

**Nos. 88–1068, 88–1214 and 88–1270.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1988.

Decided Nov. 23, 1988.

Valerie J. Peiler, Asst. Atty. Gen., Chicago, Ill., for defendants-appellants.

Malcolm A. Chandler, Robert K. Neiman, Holleb & Coff, Chicago, Ill., for plaintiffs-appellees.

Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Bethune Plaza, Inc., runs a nursing home in Illinois. On July 17, 1986, an inspector from the state's Department of Public Health arrived to investigate complaints of excessive heat and humidity; Bethune's security guard prevented her from entering. Bethune admitted John Lumpkin, the Associate Director of the Department's Office of Health Regulation, the following day. On November 14 the Department charged Bethune with a violation of its rules for excluding the first inspector, levied a $5,000 fine, and informed Bethune that on November 20 its license would be demoted to "conditional", which would bar state and federal agencies from referring new patients to Bethune. The Department gave Bethune ten days to request a hearing if it chose to contest the charge or penalties. Instead of asking the state to hold an immediate hearing or defer the alteration of its license, Bethune filed this suit under 42 U.S.C. § 1983, contending that the state's proposed course of action violated both state law (because the state acted more than 60 days after the violation) and the Due Process Clause of the fourteenth amendment (because the state diminished Bethune's property interest in its license in advance of a hearing).

The state consented to the extension of a temporary restraining order forbidding imposition of the sanctions. The district court ultimately filed an opinion concluding that the state's delay in issuing the notice violated Ill.Rev.Stat. ch. 111½ ¶ 4153–212(c), which requires action within 60 days; the statute, the court held, blocks further action based on the events of July 17. The court went on to declare that the state's attempt to alter the status of Bethune's license prior to an opportunity for an evidentiary hearing is unconstitutional. The last paragraph of the opinion reads:

> It is therefore ordered, that summary judgment is granted in favor of the plaintiff. The court further orders that the preliminary injunction now in effect against defendant be made permanent, subject to the following conditions: defendant is permanently enjoined from determining any violations, or assessing any penalties or fines, or issuing a conditional license, to plaintiff, for any matter arising out of the matters listed in the Proof of Service dated November 14, 1986.

The court's judgment, however, does not put this conclusion into effect. It reads: "IT IS ORDERED AND ADJUDGED that the defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted, and the preliminary injunction previously entered against defendant is hereby made permanent."

None of the parties called to the district judge's attention the divergence between the opinion and the judgment. They turned their attention to attorneys' fees instead. Counsel for Bethune asked for more than $90,000 in fees under 42 U.S.C. § 1988; the district court slashed this to $50,000. Counsel for the Illinois Council on Long–Term Care, a trade association of

nursing homes that had intervened to make legal arguments against the state, asked for more than $16,000 in fees and received $12,000. The state has appealed the disposition on the merits, the order allowing the intervention, and the amount of the award in Bethune's favor. Bethune has filed a cross-appeal contending that the judge was too stingy.

## I

Our first question is what, precisely, is under review. The state, taking the district court's opinion as the expression of its ruling, believes that it has been forbidden to hold a hearing or impose sanctions on the basis of Bethune's acts on July 17, 1986. Such an order, necessarily dependent on state law, would run afoul of *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed. 2d 67 (1984), for a district court may not use its views of state law as the basis of relief against the state itself. Bethune submits that the preliminary injunction simply directed the state not to change the nature of its license until giving it a hearing. Because the final judgment extends this injunction, Bethune reasons, the state may hold a hearing any time it likes and impose sanctions if the record justifies that disposition.

An injunction "shall describe in reasonable detail, *and not by reference to the complaint or other document*, the act or acts sought to be restrained". Fed.R.Civ. P. 65(d) (emphasis added). If the court had issued the preliminary injunction both parties informed us it had—one requiring the state to hold a hearing before taking action—then Bethune would be right. Only reading the language of the opinion into the injunction could produce a broader prohibition. Yet Rule 65(d) would forbid giving effect to such an incorporation. Addressees of an injunction are entitled to clear notice of what they are required or forbidden to do. A judicial opinion is not itself an order to act or desist; it is a statement of reasons supporting the judgment. The command comes in the separate document entered under Fed.R.Civ.P. 58,

which alone is enforceable. There must be a separate document, with a self-contained statement of what the court directs be done. So if the opinion contains language awarding declaratory relief, but the judgment does not, the opinion has been reduced to dictum; only the judgment need be obeyed. *Azeez v. Fairman*, 795 F.2d 1296, 1297 (7th Cir.1986).

Neither party referred us to the preliminary injunction, although both seemed sure of its contents. Our efforts to verify their assumption were in vain, for the district court never entered a preliminary injunction. Early in the suit the court entered a temporary restraining order, forbidding the state "from in any way impairing [Bethune's] unrestricted license" for ten days. The parties agreed to the extension of this order until the court could rule on the merits. Counsel for the state said in open court that this "effectively would make it a preliminary injunction." A deputy clerk may have entered a minute order to this effect. None is in the record, however, and the docket sheet says only: "By agreement, temporary restraining order is made into a preliminary injunction until the Court rules on defendants [sic] for summary judgment." Later in the case the judge said that he would reexamine the preliminary injunction if the state held a hearing. This is the source of the parties' belief that the preliminary injunction did no more than require the hearing to precede the sanction. The judge did not alter the TRO to reflect his statement, however, and, as we have explained, statements in court or in opinions do not change the contents of injunctions. Anyway, this statement was a promise to review the subject, not an immediate alteration of the restraints.

This is a mess. The problem may be attributable to a practice of some judges of having the deputy clerk enter as the judgment language in the last paragraph of the court's opinion. The practice produces frequent mismatches between the court's intent and the contents of its judgments and carries great potential for confusion—sometimes, as in *American Interinsurance Exchange v. Occidental Fire & Casualty Co.*, 835 F.2d 157 (7th Cir.1987), confu-

sion about whether the judgment is final; sometimes, as in this case, in *Soo Line R.R. v. Escanaba & Lake Superior R.R.*, 840 F.2d 546 (7th Cir.1988), and in *Azeez*, about what the judgment requires; sometimes, as in *Foremost Sales Promotions, Inc. v. Director, BATF*, 812 F.2d 1044 (7th Cir.1987), about both the content and appellate jurisdiction. Rule 58 requires the judge personally to approve the judgment in every case other than one in which all relief has been denied or a jury has rendered a verdict for a sum certain. That directive is designed to prevent the sort of problem that has arisen too frequently in this circuit. We trust that district judges will carry out their responsibilities under Rule 58, and that counsel will flag for the court's attention anything overlooked in the process.

■ What, then, is before us for review? One possibility is nothing at all—that the judgment spends itself on the air, incorporating by reference something that does not exist. Another is that the TRO converted itself into a preliminary injunction, with or without the parties' agreement and the court's aid, after ten days. Then the final judgment continuing the "preliminary injunction" would refer to the TRO, which absolutely precludes the state from altering Bethune's license. The latter approach is preferable. A TRO may be deemed a preliminary injunction if it lingers beyond ten days, *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974), and we must assume that the final disposition had some effect. So we shall treat the final judgment as having the effect the state attributes to it, because no document entered in the record permits it to have any other effect, if it has any at all.

## II

■ Starting from the premise that it has been forbidden to inquire into Bethune's conduct on July 17, the state contends that the district court should have abstained under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which was applied to states' administrative processes in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). The argument would have force if there were any legal basis for an injunction forbidding the state *ever* to hold a hearing or issue sanctions. But the only colorable basis for such relief is state law, and under *Pennhurst* the district court may not use (its view of) state law as the basis of an injunction against state officials who hold a different interpretation of state law. *Pennhurst*, based on the eleventh amendment, is a jurisdictional rule, which the court was obliged to enforce even though the state inexplicably failed to call *Pennhurst* to the district court's attention (or ours). We vacate the injunction to the extent it forbids the state to hold a hearing and act on what it finds. All that remains —all that Bethune was entitled to seek, all that the court had jurisdiction to grant—is an order postponing the penalty until after the hearing. Such an order, which does not enjoin the administrative process or require the state to decide in any particular way, falls outside the domain of *Younger*.

*Younger* and many ensuing cases protect the state's processes from premature federal interference. A state is entitled to continue in its own courts (or administrative tribunals, for there is no sharp distinction between a state "court" and a state "adjudicatory agency") litigation begun there, without having the suit under § 1983 serve as a form of federal-defense removal. Although 28 U.S.C. § 1443 permits removal on account of some civil rights defenses, the entitlement to remove exists only when the state forum is unable or unwilling to resolve the federal defense. *Georgia v. Rachel*, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); *Johnson v. Mississippi*, 421 U.S. 213, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975). A request for an injunction should not be allowed to do service for a forbidden removal. Congress also forbade issuance of injunctions against state proceedings, 28 U.S.C. § 2283, and although the Court has read § 1983 as an exception to that rule, *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the *Younger* cases show that the exception

must be used with restraint. See also *Hickey v. Duffy,* 827 F.2d 234, 240–43 (7th Cir.1987). If the state's tribunal is competent to resolve the federal defense, then the litigation must continue in that forum.

An injunction that requires the hearing to precede the penalty does not prevent the state from litigating the merits in its own tribunal. It does not preempt even a fraction of the state tribunal's power, for a penalty that occurs before the state's tribunal has been convened is not one within that tribunal's power to prevent. The state maintains that Bethune could have petitioned a state court for relief in advance of the administrative hearing, but this confuses *Younger* with a requirement of exhaustion of state judicial remedies, and there is none in § 1983 actions. *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). What the state proposed was action now, hearing later. The tribunal could reverse the action but not undo that to which Bethune objected: the *sequence.* Bethune's situation is identical to that of the defendants in *Gerstein v. Pugh,* 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975), in which the Court held *Younger* inapplicable to a challenge to the duration of pretrial detention. The criminal trial would not be a useful forum for a defendant who was claiming the right to pretrial release. So it is here.[1] The district court was entitled to adjudicate the claim that the penalty could not constitutionally precede the hearing.

## III

*Younger* is the state's only resource, for it has not contested on appeal the district court's conclusion that the Due Process Clause forbids it to alter the terms of Bethune's license in advance of an opportunity for a hearing.[2] Bethune therefore is the prevailing party, entitled to attorneys' fees. It wanted more than $90,000 and received a flat $50,000. The state thinks this is too high, and Bethune believes it is too low.

■ We have no idea whether this sum is too high, too low, or just right, because the district court did not give reasons. It picked $50,000 out of the air. The judge wrote only: "The court agrees that [sic] the defendants' contention that the time claimed is excessive and should be reduced." What in particular was excessive, and why $50,000 is the right amount, the judge did not reveal. The stakes are not peanuts, and a judge must justify a decision reducing (or awarding) fees. *Henry v. Webermeier,* 738 F.2d 188, 193 (7th Cir. 1984). The parties are entitled to an explanation, and this court cannot resolve an appeal without one. The case must be remanded for a fresh award.

The court should consider on remand the effect of our conclusion that the only relief to which Bethune is entitled is an order postponing the sanctions until after the administrative hearing. The judge assumed that Bethune won outright vindication. Much time was invested in the district court (and here) on the question whether the agency's notice was untimely

---

1. Some language in *Juidice v. Vail,* 430 U.S. 327, 336–37, 97 S.Ct. 1211, 1217–18, 51 L.Ed.2d 376 (1977), might be read as curtailing the scope of *Gerstein,* for the Court concentrated on whether the claims could be raised in the state trial, rather than whether they could be raised in time for the disposition to make a difference. Justice Stevens made the distinction in a concurring opinion, *id.* at 340–41 & n. 3, 97 S.Ct. at 1219–20 n. 3, while the majority did not discuss it. The majority did not claim to overrule *Gerstein,* however, and the Court has since cited it with apparent approval. Cf. *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 302–03, 104 S.Ct. 1805, 1810–11, 80 L.Ed.2d 311 (1984) (pretrial writ of habeas corpus is available because a double jeopardy defense at trial comes too late to avoid the harm of multiple trials).

2. The conditional license would have prevented Bethune from receiving new patients on referral from state and federal agencies, and *Cameo Convalescent Center, Inc. v. Senn,* 738 F.2d 836, 843 (7th Cir.1984), holds that a state government may not cut off a nursing home's supply of referrals without first holding a hearing. Since *Cameo* was decided, however, the Supreme Court has emphasized that governments may act to protect the public health and safety in advance of an evidentiary hearing, if they offer prompt subsequent hearings. *FDIC v. Mallen,* — U.S. ——, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988). Whether *Cameo* remains an accurate statement of the law is not a subject we shall consider.

under state law, a subject that under *Pennhurst* was beyond the court's power. The time devoted to the pursuit of this chimera is not compensable.

## IV

We have now resolved all of the disputes between the original parties. The case should be done, yet it is not. Over the state's objection, the district judge allowed the Illinois Council on Long–Term Care to intervene. The court awarded the Council $12,000 in attorneys' fees, which the state says it is not entitled to because it was not properly a party in the first place.

Although the district court did not explain its order granting the motion to intervene, the Council contended that it is entitled to intervene as of right under Fed.R. Civ.P. 24(a)(2) on the ground that it has an "interest relating to the ... transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." The Council's "interest relating to the ... transaction", as it sees things, is that the precedential effect of a decision on the merits may influence the state's conduct in the future; since the Council is a trade association, what influences the Department of Public Health affects its members. The precedential effect of the decision may "impair or impede" the Council's ability to protect its members' interests, which are (it thinks) not "adequately represented by existing parties"— in part because Bethune is not a member of the Council (implying that its interests may be adverse to the Council's?) and in part because the Council feared that Bethune would settle the litigation rather than pursue it. The Council apparently saw this case as an attractive vehicle that should be the basis of a decision favorable to the Council rather than a settlement favorable to Bethune. Before giving judgment in Bethune's favor, the district court rendered several less welcome opinions, which Bethune ultimately persuaded the court to abandon; the Council feared that Bethune might settle the case before achieving that result.

The Council is well off the mark. We asked at oral argument whether it knew of cases allowing a trade association to intervene in litigation affecting the industry just because it was worried about *stare decisis*. The Council knew of no such case, and our own research turned up none. There are good reasons why such cases can't be found.

Rule 24(a)(2) speaks of an "interest relating to the ... transaction which is the subject of the action", a requirement trade associations may have trouble satisfying because it means a *legal* interest, not an interest in the colloquial sense. ("I am interested in opera.") See *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) (a "significantly protectable interest"). Doubtless "interest" encompasses more than money or other property; see, e.g., *Smuck v. Hobson*, 408 F.2d 175, 178–80 (D.C.Cir.1969) (en banc), holding that the education of one's children satisfies the language of the Rule. However broad the term may be, a legal interest of some sort is essential, and the Council's is hard to pin down.

■ The Council does not have a concrete controversy with the state about how the state deals with Bethune's license. A trade association may have standing to represent its members, see *New York State Club Ass'n v. City of New York*, — U.S. ——, 108 S.Ct. 2225, 2231–32, 101 L.Ed.2d 1 (1988); *United Auto Workers v. Brock*, 477 U.S. 274, 281–88, 106 S.Ct. 2523, 2528–32, 91 L.Ed.2d 228 (1986), and, e.g., *National Maritime Union v. Commander, Military Sealift Command*, 824 F.2d 1228 (D.C.Cir.1987). But Bethune does not belong to the Council, and even if it did the Council could not vicariously represent a member that chooses to represent itself. *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977) (an association may represent its members only when, among other things, "neither the claim asserted nor the relief requested requires the

participation of individual members in the lawsuit"). Since the Council could not have initiated this suit or pursued it in the presence of Bethune, the real party in interest, it seems to follow that the Council may not intervene either—does not even have standing to litigate.

Frequently a court bypasses inquiry into a particular litigant's standing because its presence makes no difference, see *Bowsher v. Synar*, 478 U.S. 714, 721, 106 S.Ct. 3181, 3186, 92 L.Ed.2d 583 (1986). The court must decide the same question whether a duplicative party is in or out. Arguing along these lines, Professor David Shapiro concluded that an intervenor need not satisfy the constitutional requirement independently. *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv.L.Rev. 721, 726–28 (1968). The case will proceed and the concrete dispute must be resolved whether the intervenor is there or not. The Supreme Court has reserved for future decision the question whether the intervenor's interest must be sufficient on its own to satisfy the case-or-controversy requirement of Article III. See *Diamond v. Charles*, 476 U.S. 54, 68–69, 106 S.Ct. 1697, 1706–07, 90 L.Ed.2d 48 (1986). Perhaps it will agree with Professor Shapiro when the time comes. Yet there is a complication in many cases, including this one. When the extra litigant may block settlement or receive an award of attorneys' fees, it is not simply along for the ride. An intervenor is not an *amicus curiae*, even a "litigating" *amicus curiae* (one that introduces evidence at trial). The intervenor seeks control of the suit, acquires a right to conduct the case in a way that may undermine the interests of the original plaintiff (this may, indeed, be the intervenor's principal objective, if the intervenor contends that it has interests adverse to that party), and may become eligible for a separate grant of relief or an award of attorneys' fees. It is hard to treat a party such as the Council as a fifth wheel.

We do not pursue this possibility to a conclusion, however, because there are two independently sufficient obstacles. One is that intervention is not appropriate unless the existing parties inadequately represent the interests of the intervenor; the other is that the *stare decisis* effect of a district court's opinion does not threaten those interests. Let us start with adequacy of representation. Participants in the same industry generally make common cause; there is no reason to believe that Bethune's interests were at war with those of other nursing homes. When the trade association becomes a party (as opposed to an *amicus curiae*), the original plaintiff loses control of its case. The Council has given its fear that Bethune would settle the litigation as the reason why it thought the representation inadequate. The Council sees the opinion as the "real" purpose of the judicial process, the resolution of concrete disputes a sidelight. To the contrary, litigation exists to resolve the parties' genuine grievances; opinions are byproducts. *Rhodes v. Stewart*, —— U.S. ——, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988); *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987); *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875–76 (7th Cir.1987). The prospect that a new party might string out a case that the original parties want to resolve usually is a compelling objection to intervention rather than a reason to allow it. Permitting intervention liberally raises the costs of litigation and makes settlement harder, which may well discourage the initial suit and effectively block the real plaintiff from vindicating its own rights. When a would-be intervenor says that it fears only the *stare decisis* effect of a decision—the Council's position—the desire to block a settlement is never a legitimate reason to intervene, because if the case settles the possibility of an authoritative appellate decision vanishes, and with it the only substantial concern of the putative intervenor.

At all events, a person whose only concern lies in obtaining a favorable opinion—as opposed to a favorable judgment—does not satisfy Rule 24(a)(2) because its interest is not "impaired or impeded" by the resolution. The Council is concerned, no doubt, about how the state treats with its members. Still, when the Department of Public Health takes action that injures a

member of the Council, there will be time aplenty for judicial review, in courts state and federal. The disposition of Bethune's suit cannot adversely affect the rights of any nursing home other than Bethune. True, an opinion disagreeing with the legal views entertained by the Council may persuade the judge in subsequent litigation, but the persuasive force of a district court's opinion does not satisfy the requirement of Rule 24(a)(2): a "disposition of the action [that] may as a practical matter impair or impede the applicant's ability to protect [its] interest". The 1966 amendment to Rule 24(a), which gave us this language, overturned the former rule limiting intervention to those "bound" by the judgment. See *Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961), the target of the 1966 changes. The older language summoned up notions of res judicata and left courts with a paradox: how could someone who had remained on the sidelines be "bound" by anything? If the judgment did not bind non-parties, they could not intervene. The new language changed all that—but without going to the other extreme. The Council's position would take us there.

*Atlantis Development Corp. v. United States*, 379 F.2d 818 (5th Cir.1967), is the leading appellate opinion supporting the proposition that the persuasive (*stare decisis*) effect of an opinion may be enough to support intervention even though the putative intervenor can receive a fresh adjudication of its own claims.[3] In one sense this must be so, because the 1966 amendment to Rule 24 overturned the rule that a "binding" effect is essential to intervention as of right. As the only kind of effect other than preclusion is persuasion, and persuasion means *stare decisis*, it follows that *stare decisis* may be enough for intervention. We have said as much in *dictum*, citing *Atlantis*. *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir.1982); *Lake Investors Development Group, Inc. v. Egidi Development Group*, 715 F.2d 1256, 1260 (7th Cir.1983). At the same time, the opinion of a single district judge rarely yields an effect broader than the force its reasoning carries. Such an influence is not reason enough to complicate litigation by adding as parties all who might be concerned about the court's choice of words. Each would-be litigant can conduct its own case when its own dispute comes into focus, and the more persuasive opinions will carry the day. *Stare decisis* as *Atlantis* and other courts use it for purposes of Rule 24(a)(2) accordingly means the decision of an appellate tribunal. The decision of an appellate court is binding (not just persuasive) on those lower in the hierarchy even if not binding on the parties under principles of preclusion—that is, the parties are free to relitigate but are unlikely to get anywhere. *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1122–24 (7th Cir.1987).

When should the prospect of an appellate decision cutting off further litigation in the circuit (or the nation as a whole, if the Supreme Court decides the case) be enough to support intervention? "Infrequently" is one response, an essential one if cases are to remain manageable. Trade associations, labor unions, consumers, and many others

---

**3.** Professors Wright, Miller & Kane give a list of cases said to stand for the proposition that *stare decisis* effects may satisfy the rule. See Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FC Federal Practice and Procedure § 1908 at 302–03 n. 60 (2d ed. 1986). The others are *Oneida Indian Nation v. New York*, 732 F.2d 261 (2d Cir.1984); *Corby Recreation, Inc. v. General Electric Co.*, 581 F.2d 175 (8th Cir.1978); *Francis v. Chamber of Commerce*, 481 F.2d 192, 195 n. 8 (4th Cir.1973); *Martin v. Travelers Indemnity Co.*, 450 F.2d 542 (5th Cir.1971); and *Nuesse v. Camp*, 385 F.2d 694 (D.C.Cir.1967). *Martin* was based on *Atlantis*, a controlling decision from the same circuit. *Francis* simply cites Wright & Miller's treatise without analyzing the topic (or

needing to, since it was not dispositive). *Nuesse* permitted intervention by state banking regulators in a suit between a bank and the Comptroller of the Currency, on the ground that the initial appellate decision concerning the Comptroller's regulations would, as a practical matter, have immediate national effect. *Corby* dealt with claims arising out of a fire in a building: the lessee filed the suit, and the owner sought to intervene. There was a single core of facts, the prime case for intervention to resolve the whole dispute in one go. *Oneida*, like *Atlantis*, dealt with disputed and overlapping claims to the same tract of land. None of these opinions adds substantially to *Atlantis*, and we shall not discuss them independently.

may be affected by (and hence colloquially "interested" in) the rules of law established by appellate courts. To allow them to intervene as of right would turn the court into a forum for competing interest groups, submerging the ability of the original parties to settle their own dispute (or have the court resolve it expeditiously). Participation as *amicus curiae* will alert the court to the legal contentions of concerned bystanders, and because it leaves the parties free to run their own case is the strongly preferred option. Perhaps the right question to ask is: when will participation as *amicus curiae* be inadequate to present claims to the tribunal? That the dispute turns on unusual facts may hamper *amici curiae,* because they will lack access to the discovery machinery that the parties command, yet the more fact-bound a dispute the less authoritative or persuasive force the opinion will have. A decision that turns cleanly on its facts will not foreclose argument by those otherwise situated.

*Atlantis* itself illustrates the kind of case in which participation as *amicus curiae* may be inadequate: a dispute that is fact-intensive (so that discovery may be important) and unusual (so that the first appellate opinion on question will resolve all related claims as a practical matter), yet will be hard to distinguish away in ensuing litigation. Several defendants laid claim to a chain of coral islands off the coast of Florida. The United States, asserting that it owned the islands to the exclusion of all private claims, brought suit to quiet the title to some but not all of them. Atlantis, which claimed an island other than the ones the government had chosen to sue over, intervened. The disposition of the government's claims would not technically bind Atlantis, but as a practical matter one legal ruling would settle the fate of the claims to all of the islands. Atlantis was going to get nowhere fast if it tried to persuade a district court to disregard the Fifth Circuit's eventual holding, and the prospect of creating a conflict among the circuits was nil (all the islands were within the Fifth Circuit's jurisdiction), as was the prospect

of obtaining review in the Supreme Court. For Atlantis, the only case that mattered was a case to which it was not a party unless it could intervene. As an intervenor it might have something to offer, since the government's contentions depended in part on whether the islands were on or off the continental shelf (a disputed question), not to mention who had discovered the islands, when, and how. The combination of fact-dependence and legal uniqueness made the request for intervention compelling.[4]

■ Nothing of the sort is involved here. The Council has nothing to contribute except legal argument. If the court had rejected the Council's argument today, a new pattern might lead to a different decision tomorrow. If the Seventh Circuit should put an insuperable legal obstacle in the path of nursing homes' request for hearings in advance of changes in the status of licenses, another court of appeals might disagree, leading to resolution in the Supreme Court—where, once more, the Council could achieve as *amicus curiae* everything it legitimately hopes to achieve as intervenor. We conclude that *stare decisis* effects may satisfy the standard of Rule 24(a)(2) only when the putative intervenor's position so depends on facts specific to the case at hand that participation as *amicus curiae* is inadequate to convey essential arguments to the tribunal. Cf. *FDIC v. Jennings,* 816 F.2d 1488, 1492 (10th Cir. 1987) (intervention not allowed when factual differences dilute the effect of *stare decisis* and intervention might complicate the case). *Atlantis* said much the same thing:

> It bears repeating ... that this holding does not presage one requiring intervention of right in every conceivable circumstance where under the operation of the Circuit's stare decisis practice, the formidable nature of an en banc rehearing or the successful grant of a writ of certiorari, an earlier decision might afford a substantial obstacle. We are dealing here with a conjunction of a claim to and

---

4. Compelling, that is, if the original plaintiff were an inadequate representative of Atlantis's

interests, an additional requirement of Rule 24(a)(2) that we do not discuss.

interest in the very property and the very transaction which is the subject of the main action. When these coincide, the Court before whom the potential parties in the second suit must come must itself take the ... realistic view that the first decision will in all likelihood be the second and the third and the last one. 379 F.2d at 829 (footnote omitted). Whether even this is enough to support intervention as of right under Rule 24(a)(2), as opposed to permissive intervention under Rule 24(b)(2), is a subject we need not pursue. It is a necessary condition even if not a sufficient one, and it is not satisfied.

The Council argues in the alternative that it is entitled to intervene permissively. Rule 24(b)(2) permits intervention when "an applicant's claim or defense and the main action have a question of law or fact in common." Let us assume that this case and some future case involving another nursing home would share a "question of law or fact"—a bit of speculation that points up the Council's problem in satisfying the case-or-controversy requirement. Even so, the court must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Because the Council's stated reason for intervening was its fear that Bethune would settle the case, the Council cannot satisfy this requirement. It wanted to frustrate, delay, and prejudice Bethune's efforts to look out after its own interests. The district court did not rely on Rule 24(b)(2) and could not properly have done so.

Because the Council should not have been allowed to participate in this case as a party, it is not entitled to collect attorneys' fees under § 1988 as a prevailing party. The order allowing the Council to intervene is vacated, and the award of fees in its favor is reversed. The judgment on the merits in favor of Bethune is reversed to the extent it precludes the state from holding a hearing and taking action based on what it finds; the remainder of the judgment is vacated, and the district court shall enter a real injunction to replace the TRO. The award of attorneys' fees in Bethune's favor is vacated, and the case is remanded for further proceedings consistent with Part III of this opinion.