LAKE INVESTORS DEVELOPMENT GROUP, INC., a Delaware Corporation, now known as Sheridan Development, Inc., a Delaware Corporation, doing business in Illinois as Sheridan Group Development Company, Plaintiff-Appellee,

v.

EGIDI DEVELOPMENT GROUP, an Illinois Partnership, et al., Defendants,

and

Donald E. Peterson, Proposed Intervenor-Appellant.

No. 82–2687.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1983.

Decided Sept. 1, 1983.

Leland W. Hutchinson, Jr., Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for proposed intervenor-appellant.

Paul H. Strecker, Hanson & Shire, P.C., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

CUDAHY, Circuit Judge.

This appeal involves the petition of Donald Peterson ("Peterson") to intervene in an action brought by Lake Investors Development Corporation ("Lake") against the Egidi brothers and the Egidi Development Group ("the Egidis"). The underlying lawsuit is one for breach of a real estate sales contract. Peterson, as purchaser of a security interest in the contract rights, sought to intervene below under Federal Rule of Civil Procedure 24(a)(2). The district court denied his petition to intervene. We reverse.

I

In April of 1979 Lake and the Egidis entered into a real estate contract under which the Egidis agreed to purchase and Lake to sell for $1,000,000 certain property located at 4601 North Sheridan Road in Chicago, Illinois ("4601 Sheridan"). On February 11, 1982, Lake sued in the district court [1] for specific performance of the contract (the "4601 contract"), under which $420,000 is allegedly still owed to Lake.[2] Peterson has sought to intervene in the action between Lake and the Egidis by virtue of his position as a purchaser of a security interest in the 4601 contract, which had previously been granted to the Faribault National Bank (the "Bank") by one Harry Quinn. Peterson also filed a cross-complaint in which he alleged that Harry Quinn and his brother Howard have in essence used Lake as their alter ego and hence that Lake's affairs should be deemed,

---

1. Lake, a Delaware corporation, invoked the court's diversity jurisdiction in its suit against the Egidis, an Illinois partnership.

2. Lake first brought suit for specific performance of the 4601 contract in the Circuit Court of Cook County. The trial judge granted Peterson's motion to intervene in that action, which is presently pending. Subsequently, however, Lake was dismissed as plaintiff in that action when it admitted that it was not licensed to do business in Illinois.

by piercing the corporate veil, to be the affairs of Harry and Howard.

Harry Quinn is President both of Lake and of Mak-key Brokerage ("Mak-key"), as well as a principal shareholder in each of these enterprises. During 1978 and 1979 Harry Quinn borrowed various sums of money and executed promissory notes payable to the Faribault National Bank in Faribault, Minnesota. At that time Peterson was an officer of the Bank. Peterson alleges that Quinn borrowed the sums of money by representing to the Bank (or, in fact, to Peterson, as the bank's officer) that Lake was merely a shell for the purchase of 4601 Sheridan and that the indebtedness on the notes would be satisfied from the proceeds of the 4601 contract. Peterson subsequently purchased from the Bank two of the notes, under which he claims that he is entitled to approximately $63,000.

The two documents executed on June 11, 1979 (Exhibits H and I to the cross-complaint) are the source of the dispute before us now. A note for $36,961.35, Exhibit H, lists Mak-key Brokerage, Inc., as debtor, yet states that it is secured by two automobiles and "Harry Quinn's interest in certain real estate contract on 4601 Sheridan Rd., Chicago, Ill." This note is supported by a security agreement, Exhibit I, which lists Mak-key as the debtor, is signed "Mak-key brokerage by Harry M. Quinn," and describes the security interest in pertinent part as follows:

all interest of Howard B. Quinn as per power of attorney, Harry M. Quinn, Mak-key Brokerage, Inc., Mak-key Lease and Lake Investors Development in a certain real estate contract on 4601 Sheridan Rd., Chicago, IL. sold to The Egidi Group of Egidi Development Group . . . .

The form security agreement contains a warranty that the debtor has or will obtain title to the collateral.

The district court denied Peterson's motion to intervene primarily on the ground that these documents did not validly assign a security interest in the contract involved in this suit.

## II

Peterson seeks to intervene in this case as a matter of right. Such an intervention is governed by Federal Rule of Civil Procedure 24(a), which reads in pertinent part as follows:

Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus Peterson must be allowed to intervene in this case if he alleges: 1) an interest relating to the subject matter of the underlying action; 2) potential impairment, as a practical matter, of that interest by disposition of the action; and 3) lack of adequate representation of his interest by the existing parties to the action. *See Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 683 F.2d 201, 203 (7th Cir.1982).

In evaluating the motion to intervene, the district court must accept as true the non-conclusory allegations of the motion and cross-complaint. *Central States, Southeast and Southwest Areas Health & Welfare Fund v. Old Security Life Insurance Co.,* 600 F.2d 671, 679 (7th Cir.1979); *accord United States v. AT & T,* 642 F.2d 1285, 1291 (D.C.Cir.1980). A motion to intervene as a matter of right, moreover, should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint. 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 12.08 (2d ed. 1982); *United States v. 635.76 Acres of Land,* 319 F.Supp. 763, 766 (W.D.Ark.1970), *aff'd,* 447 F.2d 1405 (8th Cir.1971).

## III

Our inquiry begins with the question whether the proposed intervenor here claims an interest relating to the property or transaction which is the subject of the

action. As this court has previously noted, what constitutes an "interest" for purposes of this rule is by no means clear.[3] *Meridian Homes,* 683 F.2d at 203. The Supreme Court has embraced a broad definition of the requisite interest, *see Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), describing it as one which is "significantly protectable," *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). While accepting this broad definition of what constitutes an interest, this court continues to require, however, that the interest be direct and substantial. *Meridian Homes,* 683 F.2d at 204.

The interest claimed by Peterson here is that of a holder of a security interest in the 4601 contract, which is the subject of the suit in which he seeks to intervene. If indeed the security interest which he purchased is a valid one, we are persuaded that this interest is sufficiently "direct and substantial" to support intervention of right.[4] *See Ordinance Container Corp. v. Sperry Rand Corp.,* 478 F.2d 844 (5th Cir.1973); *Ionian Shipping Co. v. British Law Insurance Co.,* 426 F.2d 186 (2d Cir.1970); *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118 (5th Cir.1970).

The district court, however, concluded that the documents in this case did not constitute a valid assignment of Lake's interest in the 4601 contract and therefore that Peterson (and presumably also the Bank before him) had *no* interest in the property which has become the subject of this lawsuit. However, since intervention may be denied only if it appears that the intervenor would not be entitled to relief under any set of facts which could be proved in support of the motion and cross-complaint, the district court's conclusion may stand only if it is clear from the document that there is *no* set of facts capable of proof which would support Peterson's claim to a security interest in the 4601 contract. The claim would be impossible to support only if the security agreement unquestionably and unambiguously reflected an invalid assignment.

We do not believe that the only possible conclusion to be drawn from the face of Exhibit I is that the assignment of rights in the 4601 contract was invalid. The agreement was signed by Harry Quinn, as Mak-key's President, yet purported to assign Lake's interest in 4601 Sheridan. Peterson has alleged that Harry Quinn obtained the loan upon a representation that he had the authority to offer the 4601 contract as security; it is further alleged that both Lake and Mak-key are merely different forms under which the Quinn brothers do business. (Indeed, if Lake and Mak-key are, as alleged, merely shells established for the

---

**3.** Wright and Miller have expressed the opinion that this question may not be worth answering. 7A C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1908 (1972).

**4.** The district court, in deciding to the contrary, relied heavily upon its conclusion that Peterson's security interest was similar to the interest at issue in *Meridian Homes,* 683 F.2d 201, which this court had found not to be direct and substantial. In *Meridian Homes,* this court was persuaded that the intervenors' interest was not a sufficiently direct one, since it was only in those profits of a joint venture to which the defendant, Prassas Company, might become entitled rather than in the joint venture itself. Very significantly, the terms of the agreement governing the nature of the interests of the proposed intervenors specified that they were not to be considered partners in the joint venture. As non-partners they had no legal interest in the continuation or dissolution of the joint venture agreement which was at issue in the underlying litigation. *Id.* at 204. While the underlying lawsuit was one to dissolve the joint venture, the intervenors alleged breach of fiduciary duty on the part of the Prassas Company, which was a joint venturer. By contrast, in the case at hand the security agreement of which Peterson is presently the assignee gives him an immediate right to the collateral in the event of default on the note (which is past due), and that collateral is the very subject of the underlying lawsuit: "all interest" in the real estate contract on 4601 Sheridan. Thus Peterson's interest is immediately and directly in the subject of this lawsuit.

We note, as well, the very important consideration that in *Meridian Homes* there was no reason to believe that the Prassas Company would not adequately represent the interest of the intervenors—unlike the situation in the case at hand where, as we discuss in Part V *infra,* the plaintiff and intervenor are competitors for a fund.

sale of the real estate, the interest in 4601 Sheridan is presumably the only collateral sufficient to induce a loan of approximately $37,000.) Accepting these allegations as true, as we must for the purposes of this motion, the document is susceptible of more than one interpretation. That the assignment was invalid is one possible conclusion, but that Harry Quinn had the capacity to make an assignment on behalf of Lake is another hypothesis. This mystery cannot be solved merely from the face of the contract.

■ Where a contract is, as this one, ambiguous on its face, Minnesota law, which governs the substantive issues in the case before us, permits the introduction of extrinsic evidence.[5] *Peterson v. Homan*, 44 Minn. 166, 46 N.W. 303, 304 (1890). Yet determinations of fact based on extrinsic evidence are not appropriate at the stage of a motion to intervene. *See Central States*, 600 F.2d at 679. We find, therefore, that the district court erred in its determination that no state of facts could be proved which would support the conclusion that Peterson had a sufficient interest in the subject of this lawsuit for purposes of Rule 24(a)(2).

### IV

■ Having found that the district court erred in its conclusion that Peterson did not have a sufficient interest for purposes of Rule 24(a), we turn to the second element which must be alleged in order to support intervention: impairment of that interest, as a practical matter, if Peterson is not allowed to intervene. As this court has recently noted, "impairment" exists if the decision of a legal question would, as a practical matter, foreclose rights of the proposed intervenor in a subsequent proceeding; foreclosure is to be measured in terms of *stare decisis*. *Meridian Homes*, 683 F.2d at 204, *citing Atlantis Development Corp. v. United States*, 379 F.2d 818, 826–29 (5th Cir.1967).

■ We think that Peterson has demonstrated potential impairment. No matter what the outcome of the case between Lake and the Egidis, its result will reduce the contract to judgment and extinguish the rights under the contract. Peterson's security interest, since it is an interest in the contract rights themselves, will disappear, or be converted ·into elusive "proceeds," when the contract has been performed or reduced to judgment. Although the appellee has suggested that Peterson could still proceed against Quinn, Peterson's interest would undergo a sea change putting its value substantially at risk: Peterson's status would be changed from that of a party secured by contract rights to that of a creditor whose security was precarious or nonexistent. The appellee argues that Peterson's interest will not be impaired, however, because he has already been permitted to intervene in the action pending in Illinois state court; and the district court, in a Supplemental Opinion and Order entered on September 21, 1982, found such reliance on the state proceeding to be consistent with this court's recently expressed preference for abstention during the pendency of a state proceeding. *Microsoftware Computer Systems, Inc. v. Ontel Corp.*, 686 F.2d 531 (7th Cir.1982). The district judge also noted that in *Meridian Homes* there was an action pending in state court and that this fact was a factor in our decision that the intervenors' interest would not be impaired. 683 F.2d at 205.

We find these arguments unpersuasive when applied to the case before us. In *Meridian Homes*, the intervenor's state court action for breach of fiduciary duty would not have been impaired by a judgment in federal court on the issue whether the joint venture could be dissolved. By contrast, if the contract suit in this case proceeds to judgment, the subject of the

---

5. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), mandates the application of Illinois choice of law rules to determine which state's substantive law will be followed in this diversity case.

Since the security agreement was entered into in Minnesota and was to be performed in more than one place, Minnesota law governs validity, construction, scope and performance. *DP Ser-*

intervenor's security interest (the contract rights) will be destroyed.[6]

## V

Finally, we address the question whether Lake is an adequate representative of Peterson's interest in the suit against the Egidis. We note at the outset that the Supreme Court in articulating the standard under this third element of Rule 24(a)(2) has stated that this "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972).

Lake argues here that it has every reason diligently to pursue its cause of action against the Egidis in order to recover the amount due under the 4601 contract. Despite this circumstance, we do not think that Peterson and Lake have the same ultimate objective. Although both parties seek recovery from the Egidis, Peterson seeks the full amount of his claimed interest, while it is in Lake's interest to recover from the Egidis without necessarily paying any portion of that recovery to Peterson. Further, although the amount sought by Lake would more than cover Peterson's claim, the amount of the recovery could be substantially reduced in the course of the litigation; the parties might, for example, settle their dispute for a lesser sum. If that were to occur, Lake and Peterson would be even more directly in competition for the same fund. In such a situation, we do not think that Lake can be said adequately to represent Peterson's interest. Our conclusion in this respect comports with the Eighth Circuit's conclusion that when two claimants compete for a fund which is inadequate to meet all the demands made on it, one claimant cannot adequately represent

the other. *Commercial Union Insurance Co. v. City of St. Louis,* 497 F.2d 957, 958 (8th Cir.1974).

Because we have found that Peterson claims a direct and substantial interest in the 4601 contract, that his interest would be impaired by a disposition of the underlying lawsuit, and that Lake cannot adequately represent Peterson's interest in that litigation, we hold that he has met all of the requirements for intervention under Rule 24(a)(2) of the Federal Rules of Civil Procedure. The judgment of the district court denying him leave to intervene is therefore reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

---

vice, Inc. v. AM International, 508 F.Supp. 162, 164 (N.D.Ill.1981).

**6.** We also note that the multiplicity of actions here was created by Lake itself, since Lake first sued in state court and then was dismissed as a plaintiff when it admitted that it was not authorized to do business in Illinois. Lake immediately filed an action in federal district court. It would indeed be unfair if Peterson's interest in the 4601 contract could thus be jeopardized because Lake has maneuvered into a situation where the federal action may well be decided before the state action.