**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

**HARBOR INSURANCE COMPANY and Allstate Insurance Company, Plaintiffs,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

**Nos. 85 C 7080, 85 C 7081.**

United States District Court, N.D. Illinois, E.D.

Nov. 18, 1986.

See also, 113 F.R.D. 527.

James G. Hiering, Dennis C. Waldon, Jeffrey I. Berkowitz, Richard L. Reinish, A.

**534**

Benjamin Goldgar, Keck, Mahin & Cate, Chicago, Ill., for plaintiffs.

Lawrence Eiger, Michael B. Hyman, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Nicholas E. Chimicles, Greenfield & Chimicles, Haverford, Pa., Lawrence Walner, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harbor Insurance Company ("Harbor"), Allstate Insurance Company ("Allstate") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") have sued Continental Illinois Corporation ("CIC"), its subsidiary Continental Illinois National Bank and Trust Company of Chicago ("Bank")[1] and a host of other defendants, seeking to avoid liability under the directors' and officers' ("D & O") policies plaintiffs had issued to CIC.[2] Fred Steinlauf ("Steinlauf"), as representative of the certified class of shareholders (the "Class") in the *Continental Illinois Securities Litigation*, 82 C 4712 (the "Shareholder Action"), has asked to intervene as a defendant. For the reasons stated in this memorandum opinion and order, Steinlauf's motion is denied.

■ Fed.R.Civ.P. ("Rule") 24(a) defines the conditions for intervention as of right, conditions summarized in *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 203 (7th Cir.1982):

(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition

of the action, and (4) lack of adequate representation of the interest by the existing parties to the action.

Any proposed intervenor must establish each of those requirements—intervention is a game in which *one* strike is out. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985).[3]

Because Steinlauf originally moved to intervene October 30, 1985, Harbor, Allstate and National Union (all of whom oppose Steinlauf's intervention) do not challenge the timeliness of his application. They do however dispute the existence of each of the other prerequisites for intervention as of right.

### Interest Relating to the Subject Matter

■ Steinlauf must demonstrate a legally cognizable interest, both direct and substantial, in the subject matter of these cases. *Lake Investors Development Group, Inc. v. Egidi Development Group,* 715 F.2d 1256, 1259 (7th Cir.1983). That interest must be so direct the applicant could maintain a separate action to enforce or protect the interest. *Keith*, 764 F.2d at 1268.

Here the subject matter is the existence or nonexistence of D & O coverage, under the Harbor-Allstate-National Union policies, for some or all the claims being asserted against Continental's present and former officers and directors in underlying securities litigation. Steinlauf bases his claim of interest in that subject matter on a settlement agreement in one of the underlying securities cases,[4] imposing liability on

---

1. CIC and Bank are collectively called "Continental."

2. Because this Court has typically begun all its opinions in these cases with the same opening description, some means of early differentiation is useful. Solely for that purpose, it is noted this is this Court's twelfth written opinion since the cases were assigned to its calendar after a series of recusals by other judges of this District Court.

3. Steinlauf simply ignores the uniform case law in this Circuit when he claims those who *oppose*

intervention have the burden of showing adequacy of representation. That factor, like the others, is part of the applicant's burden of proof. *Keith,* 764 F.2d at 1268.

4. Steinlauf's action is only one of several actions brought against Continental or its officers and directors or both (because no consequence flows from the distinction, for convenience this opinion will refer to the individual defendants as "officers-directors"). One of the others, *FDIC v. Anderson,* 82 C 4712 (N.D.Ill.) is an action recently settled by the Federal Deposit Insurance Corporation ("FDIC"), Continental's assign-

Continental and nine of its former officers-directors (all defendants here) for $25 million and $20 million, respectively.[5] But Steinlauf agreed the class could recover the $20 million settlement with the ex-officers-directors *"solely* from the D & O Insurers" (Stip. ¶ 4A, emphasis in original), for which purpose the ex-officers-directors assigned to Steinlauf their rights under the D & O policies in respect to the class claims (*id.* ¶ 5A). Judge Grady approved that settlement July 25, 1986, dismissing with prejudice the class claims against Continental and the former officers-directors.

■■■■ By reason of the assignment of any insurance coverage that may exist for the class claims against the former officers-directors, Steinlauf clearly has a direct and substantial interest in the subject matter of these cases: the very existence of any such insurance coverage (cf. *Lake Investors*, 715 F.2d at 1259 n. 4).[6] That interest ·could likely ground a direct action against Harbor, Allstate and National Un-

ion.[7] In addition to the latters' assertions that the class claims are not within the scope of their D & O policies, Count VII of each Complaint also alleges the class claims are not covered by the D & O policies because Continental's former officers-directors breached their duties under the policies by settling with Steinlauf. Although Steinlauf's interest here would be contingent on a decision finding coverage, intervention as of right can be based on an interest that is contingent on the outcome of the underlying litigation. *SEC v. Flight Transportation Corp.*, 699 F.2d 943, 948 (8th Cir.1983).

*Impairment of Intervenor's Interest*

■■■■ Despite Steinlauf's direct and substantial interest in establishing insurance coverage for the class claims, he has failed to show that interest will be impaired by the disposition of these cases. Steinlauf points to several legal questions, necessarily to be decided in these cases, that are

---

ee. That settlement is the basis for FDIC's $88 million counterclaim in these actions. Steinlauf's action is one of two class actions on behalf of shareholders who purchased stock in CIC during certain time periods. Steinlauf represents shareholders who purchased stock between September 1, 1981 and July 5, 1982. *Spring v. Continental Illinois Corporation*, 84 C 4698, is a class action for shareholders who purchased CIC stock from November 1982 until May 1984. In addition, shareholders who opted out of the class actions may have individual claims against Continental and its former officers-directors.

5. Under the Stipulation of Settlement (the "Stipulation" or "Stip. ¶ —"), Continental also has a contingent liability to the class for an additional $5 million if the present actions result in a finding of no coverage for the class claims under Counts I, II or VII of the Harbor-Allstate-National Union Complaints (Stip. ¶ 8).

6. In part Harbor-Allstate-National Union challenge Steinlauf's intervention on standing grounds. However, Judge Grady not only (1) approved Steinlauf as representative of the certified class but also (2) approved Steinlauf's settlement of the class claims and (3) ordered the settlement carried out pursuant to the Stipulation. Clearly the Stipulation itself contemplates the class, through Steinlauf, will attempt to enforce its assigned rights. Steinlauf has already notified the class of his intention to

intervene, as their representative, in these cases. Harbor-Allstate-National Union assert no reason Steinlauf should not continue as the class representative for that purpose, and this Court perceives none.

7. Harbor-Allstate-National Union also contest Steinlauf's ability to bring a direct action against them under Illinois law (thus anticipating Steinlauf's inevitable counterclaim for $20 million if he were allowed to intervene) and the validity of the assignments from the former officers-directors of Continental. That direct action argument would of course be more appropriate if Steinlauf were now asserting a claim against the D & O carriers rather than attempting to intervene to defend against their actions. But that point apart, this Court decided the same issue in its November 13, 1986 opinion, 113 F.R.D. 527. Illinois law does not prohibit direct actions by an injured party against an insurer once the injured party has settled its claim with the insured. *Loeber Motors, Inc. v. Sims*, 34 Ill.App.3d 342, 340 N.E.2d 132 (1st Dist.1975). As for the other argument, regarding the assignability of insurance coverage under the D & O policies, that is really premature. Those assignments would have to be unquestionably invalid to prevent Steinlauf's intervention (*Lake Investors*, 715 F.2d at 1259), and Harbor-Allstate-National Union point to nothing in their D & O policies (nor do they cite any cases) that would prohibit the assignments.

identical to legal issues to be posed in any litigation between Steinlauf and Harbor-Allstate-National Union as to Steinlauf's assigned rights under the D & O policies. Steinlauf argues the decisions in these cases will thus, as a practical matter, impair his interests.

Because Steinlauf is not now a party to this litigation, he will not be legally bound by any adverse decision in these cases. Nonetheless Steinlauf correctly points out the practical impairment concept in Rule 24(a) is not limited to the res judicata or collateral estoppel effects of prior decisions. Such impairment can also occur through the operation of stare decisis. *Lake Investors*, 715 F.2d at 1260.

But a simple claim of potential stare decisis effect is not enough. Instead Steinlauf must show the presence of additional factors that would give the decision in these cases compelling persuasive force in his later litigation. *Jet Traders Investment Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 569 (D.Del.1981). That would be so, for example, when a proposed intervenor would be forced to present identical issues of law and fact to the same court in a later action. See *Martin v. Travelers Indemnity Co.*, 450 F.2d 542, 554 (5th Cir.1971). Here, however, any such future presentation by Steinlauf would involve (1) questions of Illinois law (2) presented to an Illinois trial court.[8] On that score *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir.1977) accurately observes:

A decision by the federal district court on [these state law issues] would be entitled to about the same weight as a state trial

court's determination of [the issues], given that they are on parallel levels in their respective systems. That degree of stare decisis would not so hamper the assertion of a different position on the issues in the state court.

Hence any arguable practical impairment of Steinlauf's interest because of the stare decisis effect of this Court's decisions is minimal at best.

As a second ground of practical impairment, Steinlauf argues the outcome of these cases will deplete the insurance coverage available for claims against Continental's officers and directors and therefore make it difficult or impossible for Steinlauf to collect the $20 million due under the settlement. Steinlauf is correct that depletion of a fund, making it unlikely an intervenor could ever be fully compensated, may *sometimes* be a sufficient impairment of interest to meet the Rule 24(a) standard. See *Calvert Fire Insurance Co. v. Environs Development Corp.*, 601 F.2d 851, 858–59 (5th Cir.1979). However, such cases are limited to "situations where a discrete, distinguishable fund exists." *Jet Traders*, 89 F.R.D. 569–70.

No such discrete fund exists in these cases. All the issuers of D & O insurance to CIC are not before this Court: Harbor, Allstate and National Union account for 65% ($65 million) of the potential insurance coverage for claims against Continental's officers and directors.[9] Thus all the potential sources from which Steinlauf might recover his claims are not available in these actions.[10] Steinlauf can hardly argue the

---

**8.** Steinlauf's memoranda appear to assume any direct action by Steinlauf against Harbor, Allstate and National Union would be tried before a federal district court. But no basis for federal court subject matter jurisdiction has been identified. In these cases and in any subsequent direct action by Steinlauf all his causes of action are matters of state law, and diversity of citizenship is absent (both Steinlauf and Allstate are Illinois citizens).

**9.** Moreover, the Harbor-Allstate-National Union potential liability, in light of the numerous counterclaims in these cases, is not necessarily limited to the face amounts of their D & O

policies. Count II of FDIC's counterclaim for $88 million seeks recovery in excess of the policy's limits.

**10.** Continental Casualty Company and First State Underwriters Agency of New England Reinsurance Corporation provided $35 million in excess D & O coverage to CIC. They are not parties to these lawsuits. This Court has previously denied their application for intervention as of right (110 F.R.D. 608 (N.D.Ill.1986)) and their joinder as third-party defendants by FDIC (see this Court's November 13, 1986 opinion, 113 ·F.R.D. 527).

possible depletion (or even exhaustion) of 65% of the total D & O insurance coverage of $100 million, which would pro tanto reduce the access of the claimants to the other $35 million in coverage, would fatally impair his $20 million interest in D & O insurance coverage for the class claims.

Finally Steinlauf argues denying him intervention will force him to bring a second lawsuit, which would eventually be consolidated with these actions and would make settlement of these suits difficult if not impossible.[11] As n. 8 indicates, Steinlauf's threatened lawsuit would appear to be a state court action, posing no prospect of such consolidation. But even were that not so, *Gautreaux v. Pierce*, 743 F.2d 526, 534–35 (7th Cir.1984) rejects Steinlauf's argument:

> While a showing of inconvenience, cost and delay sometimes may be sufficient to satisfy Rule 24(a)(2)'s impairment of interest requirement, that is not the case here.... Refusing to allow intervention effectively would require only that Intervenors refile their motions and supporting documents in another lawsuit.... Under these circumstances, refusing to allow intervention will cause little if any inconvenience that would not also exist if we allowed intervention.

Because all the issuers of D & O policies to CIC and all those with potential or actual claims to the proceeds of those policies are not present in these actions, later litigation or settlement negotiations (or both) with non-parties is (or are) inevitable. This Court fails to see how Steinlauf's intervention will change that fact.

### Adequate Representation

█ Steinlauf has shown only one possible way in which the disposition of these cases may impair his interest in insurance coverage for the class claims: the stare decisis effect of any such decisions on his subsequent litigation. But even that minimal effect is further reduced, because there are parties already in these actions whose position on all the relevant legal issues is the same as Steinlauf's would be. See *Blake*, 554 F.2d at 954.

Steinlauf's burden of showing that his interest in these cases is not adequately represented is minimal. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). However, because many of the present defendants in these cases have the same ultimate objective in these lawsuits as does Steinlauf—insurance coverage for the class claims or similar claims—Steinlauf must demonstrate *some* conflict exists. *Meridian Homes*, 683 F.2d at 205.

Steinlauf cites *Lake Investors*, 715 F.2d at 1261 for the proposition that because he would be competing for a fund insufficient to meet all the demands made on it, the present defendants cannot adequately represent his interest. Even if that notion of fund insufficiency were accepted (but see the earlier discussion), these cases are sufficiently different from *Lake Investors* to negate any presumption that Steinlauf's interests are not already adequately represented.

In contrast to the *Lake Investors* situation, Steinlauf has cooperated closely with one defendant in these cases, FDIC, and several other defendants are contractually obligated to Steinlauf to defend these lawsuits vigorously. FDIC and Steinlauf cooperated when negotiating their separate settlement agreements with former officers and directors of Continental. In fact, they have already agreed how to divide any joint recovery (including possible recovery in excess of the policy limits). Steinlauf's settlement with Continental and the former officers-directors obligates the latter "to defend vigorously the D & O litigation." Continental faces $5 million in additional liability to Steinlauf if Harbor-Allstate-National Union succeed under Counts I, II or VII of their Complaints.

Steinlauf nonetheless insists only he has an incentive to defend Count III of the

---

11. Although Steinlauf has not presented this argument in terms of impairment of his interest, that appears to be the most relevant factor in the Rule 24(a) analysis.

Complaints effectively.[12] Count III is based on the concept the D & O policies do not cover liability for willful and reckless misconduct by Continental's officers and directors. Steinlauf argues no present defendant will assert (1) the D & O policies do cover such conduct and (2) Continental's former officers-directors did engage in such conduct. Only the second part of that contention of nonassertion is correct, and any such "inadequacy" is irrelevant to these lawsuits in any event.

All Continental's former officers and directors have an obvious incentive to establish the policies do cover liability for any willful or reckless misconduct by them— and that is so (given the chanciness of litigation) however vigorously they challenge any claimed impropriety in their conduct. It is thus wholly beside the point that no present defendant in these cases will argue Continental's former officers and directors in fact engaged in willful or reckless misconduct.[13] Such an argument is unnecessary to protect Steinlauf's interest in this litigation. Continental's former officers-directors who settled with Steinlauf did not admit to any wrongdoing, and it is not necessary to prove any such wrongdoing to show the reasonableness of the settlement.

Continental, its former officers and directors and FDIC are all vigorously asserting claims against Harbor, Allstate and National Union, and their positions cannot fairly be considered adverse to Steinlauf's interests. More than that, they can be counted on to fight all the same battles Steinlauf would wage save one: his assertion of the officers'-directors' wrongdoing necessary to trigger D & O insurance coverage—and *that* difference in position is

immaterial for current purposes, for the other litigants must assume that fact to litigate here at all.

There are thus defendants present in these lawsuits who have the incentive and the obligation to make all the relevant legal arguments that Steinlauf would make if he were a defendant. His interest in establishing insurance coverage for the class claims will be adequately represented. Even if all the other criteria discussed in this opinion had been ruled on in Steinlauf's favor, this one alone calls for denial of Rule 24(a) intervention.

### Permissive Intervention

■ In the alternative Steinlauf seeks this Court's permission to intervene under Rule 24(b). Permissive intervention requires that Steinlauf's "claim or defense and [these actions] have a question of law or fact in common," and is entirely at the discretion of this Court. *Keith,* 764 F.2d at 1272. Permissive intervention differs importantly from intervention as of right in that this Court does not have ancillary jurisdiction over the intervenor's claims. Steinlauf must establish independent grounds for this Court's subject matter jurisdiction over his dispute with insurers. *Reedsburg Bank v. Apollo,* 508 F.2d 995, 1000 (7th Cir.1975).

■ Neither side has addressed the jurisdictional issue. Although permissive intervention as a defendant in a federal question lawsuit ordinarily causes no jurisdictional problems (because the intervenor also normally advances a federal question, 7C Wright & Miller, *Federal Practice and Procedure: Civil* § 1917, at 481–82 (1986)), these cases are by no means ordinary.

---

**12.** Steinlauf also claims only he can and will defend the settlement against certain allegations in Count VII of the Complaints. It is true that *Continental* faces no additional liability if Count VII results in a determination that there is no insurance coverage for the class claims because the settlement was the result of collusion between Steinlauf and the former officers-directors. But the former officers-directors are contractually obligated by the settlement to defend that settlement in these lawsuits. Steinlauf says they lack the knowledge to do so, apparent-

ly not recognizing how that assertion appears to undermine his claim that the settlement agreement is reasonable.

**13.** Again Steinlauf ignores the implications of his contentions. Suppose he intervened here to urge such conduct existed (thus making common cause with Harbor-Allstate-National Union). As the latter point out, that assertion might actually prejudice Steinlauf's interest.

Federal jurisdiction exists here only because FDIC is a defendant. None of the insurers' claims presents federal questions,[14] nor is there complete diversity between plaintiffs and defendants. Steinlauf's interests raise no federal questions, and if he brings a direct action against the insurers it would have to be in a state court. It seems improper for Steinlauf to be able to shoehorn himself into these declaratory judgments simply because FDIC is already a defendant, and at a minimum that factor bears importantly on this Court's exercise of its discretion. Indeed, 7C Wright & Miller § 1917, at 482 teaches the present jurisdictional situation is fatal to Steinlauf's permissive intervention.

Steinlauf's defense of these actions undoubtedly would raise numerous legal and factual questions identical to those already present. Although Steinlauf thus satisfies the requirement of Rule 24(b), the same factor can also cut against his attempted intervention (*United States v. American Institute of Real Estate Appraisers*, 442 F.Supp. 1072, 1083 (N.D.Ill.1977) (citation omitted)):

> Where the proposed intervenor merely underlines issues of law already raised by the primary parties, permissive intervention is rarely appropriate.
>
> > Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair.

As this Court noted in an earlier opinion in these cases, 110 F.R.D. 608, 612:

These lawsuits are already complex and bid fair to become unmanageable. Addition of new litigants and new counsel tends to increase the difficulties geometrically rather than arithmetically.

Steinlauf's arguments regarding judicial economy do not offset these concerns. Harbor-Allstate-National Union have not chosen to join all the issuers of D & O policies to CIC, or all those with actual or potential claims to the proceeds of those policies, as parties to *their* lawsuits. Because of that permissible choice, later litigation involving the additional insurance carriers and claimants is likely if not inevitable. Steinlauf's intervention into these actions will not change that.[15] Because Steinlauf's intervention would unduly delay or prejudice the adjudication of the rights of the original parties, this Court exercises its discretion and denies Steinlauf permission to intervene as a defendant.

### Conclusion

Steinlauf has not satisfied Rule 24(a)'s requirements for intervention as of right, nor has he convinced this Court he should be allowed to intervene in these complicated lawsuits as a defendant. Steinlauf's application for intervention on behalf of the shareholder-action class is denied.

14. Federal jurisdiction exists over these actions for declaratory judgments only because of 12 U.S.C. § 1819, which says any action involving FDIC is deemed to arise under the laws of the United States. Count III's reference to 12 C.F.R. § 7.5217 does not create federal-question jurisdiction (*Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 242–43, 97 L.Ed. 291 (1952)):

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.

15. This Court also cannot ignore the fact that its granting Steinlauf's application will inexorably result in the renewed attempt by Harbor-Allstate-National Union to join non-parties who might also be liable for Steinlauf's claims and would invite additional applications to intervene by other potentially interested non-parties.