In re MIDWAY AIRLINES, INC., Midway Airlines (1987), Inc., and Midway Aircraft Engineering, Inc., Debtors.

MIDWAY AIRLINES, INC., Midway Airlines (1987), Inc., and Midway Aircraft Engineering, Inc., Plaintiffs,

v.

NORTHWEST AIRLINES, INC., Defendant.

Nos. 91 B 06449, 91 B 06451 and 91 B 06450.
Adv. No. 91 A 1176.
Civ. No. 92 C 1096.

United States District Court, N.D. Illinois, E.D.

May 21, 1993.

Kenneth S. Goodsmith, Latham & Watkins, John W. Costello, Harold Roderic Heard, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Midway Airlines, Inc., Midway Airlines (1987), Inc. and Midway Aircraft Engineering, Inc.

Michael R. Hassan, Daniel I. Schlessinger, Michael Yetnikoff, Benjamin Waisbren, Lord, Bissell & Brook, Chicago, IL, for Aeron Aviation Resources I, Inc.

Richard Thomas Franch, Robert Thomas Markowski, James A. McKenna, Daniel Richard Murray, Randall E. Mehrberg, Jenner & Block, Chicago, IL, for Northwest Airlines, Inc.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the appeal of the appellant Aeron Resources Holdings I, Inc. ("Aeron") from the judgment of the Bankruptcy Court denying its motion to intervene. For the reasons set forth below, the judgment of the Bankruptcy Court is affirmed.

## I. FACTS

On March 25, 1991, Midway Airlines, Inc. ("Midway"), Midway Airlines (1987), Inc. and Midway Aircraft Engineering, Inc. filed bankruptcy petitions pursuant to chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*[1]

On July 9, 1991, pursuant to the approval of the bankruptcy court, Midway entered into long-term leases with Aeron of seventeen DC 9–30 aircraft for use in Midway's flight operations.

In the fall of 1991, Northwest Airlines, Inc. ("Northwest") and Midway entered into negotiations for Northwest to purchase substantially all the assets of Midway and to assume certain of Midway's liabilities. On October 8, 1991, the bankruptcy court held a hearing during which Northwest and Midway presented to the court a proposal whereby Northwest would purchase substantially all the assets of Midway.[2] On October 10, 1991, Midway entered into an Asset Purchase Agreement ("Purchase Agreement") with Northwest whereby Northwest agreed to purchase 21 gates and related property at Midway Airport from Midway.

In November of 1991, Midway filed adversary proceedings against Northwest in Bankruptcy Court alleging, among other claims, breach of contract. Four days later, Aeron filed a motion to intervene. Aeron claimed it had a right to intervene because the aircraft leases were to be assumed by Northwest as part of the agreement between Northwest and Midway.

On December 23, 1991, Bankruptcy Judge Squires held a hearing on Aeron's motion. Only Northwest opposed Aeron's motion. The bankruptcy court denied Aeron's motion to intervene. Aeron now appeals from that judgment.

## II. JURISDICTION AND STANDARDS OF REVIEW

■ This court has appellate jurisdiction to review the final order of the bank-

---

1. On November 27, 1991, Midway's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code, and Sheldon L. Solow was appointed as interim Trustee.

2. This court does not decide at this juncture whether the parties entered into a contract during or as a result of the October 8th hearing. There appears to be a factual dispute on this point.

ruptcy court pursuant to 28 U.S.C. § 158(a). The standard of review for the bankruptcy judge's denial of intervention of right under Rule 24(a)(2) is *de novo*. The bankruptcy judge's denial of permissive intervention under Rule 24(b)(2) is reviewable under an abuse of discretion standard.

## III. DISCUSSION

### A. *Intervention as of Right*

■ To intervene in an action as of right, a movant must show four elements:
(1) timely application;
(2) an interest relating to the subject matter of the action;
(3) potential impairment, as a practical matter, of that interest by the disposition of the action; and
(4) lack of adequate representation of the interest by the existing parties to the action.

FED.R.CIV.P. 24(a)(2).[3] *See also South- mark Corporation v. Cagan*, 950 F.2d 416, 418 (7th Cir.1991) (citing *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 203 (7th Cir.1982)). As the movant, Aeron bears the burden of establishing all four elements in order to prevail.

### 1. *Timeliness*

■ Aeron filed its motion to intervene four days after Midway commenced adversary proceedings against Northwest. Accordingly, Aeron filed its motion to intervene in a timely fashion.

### 2. *Interest in The Subject Matter of The Action*

The bankruptcy judge stated without explanation that Aeron had shown an interest relating to the subject matter of the action. Transcript dated December 23, 1991, D–27, at 41. Aeron maintains that the bankruptcy court correctly determined that Aeron has a direct and substantial interest in the contract dispute between Midway and Northwest. Aeron argues that as a third-

party beneficiary of the contract, it has an independent right to recover damages from Northwest resulting from any breach. Northwest maintains that Aeron is not a third-party beneficiary of the Purchase Agreement because neither Midway nor Northwest intended to confer a direct benefit upon Aeron by entering into the Purchase Agreement. Furthermore, Northwest points out that the Purchase Agreement specifically states that it is not intended to benefit any third parties. Northwest further argues that Aeron has only an indirect interest in the outcome of the underlying action because Aeron, like Midway's other creditors, will collect more money to satisfy Midway's debt if Midway prevails.

■ To prevail on a motion to intervene as of right, a movant must demonstrate a direct and substantial interest in the subject matter of the action. *Lake Investors Development Group, Inc. v. Egidi Development Group*, 715 F.2d 1256, 1259 (7th Cir.1983). The interest "must be based on a right that belongs to the proposed intervenor rather than to an existing party in the suit ... [and] must be so direct that the applicant would have 'a right to maintain a claim for the relief sought.'" *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir.) (citations omitted), *cert. denied*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985). Intervention may only be denied, however, if it appears that the proposed intervenor would not be entitled to relief under any set of facts which could be proved from the motion. *Lake Investors Development Group, Inc.*, 715 F.2d at 1259. Therefore, to show a sufficient interest in the subject matter of the adversary proceedings between Northwest and Midway, Aeron must show that it could maintain an independent action for breach of contract or fraud against Northwest.

■ Thus, the court must decide whether Aeron is a third-party beneficiary of the contract between Northwest and Midway by looking to Illinois' law on con-

---

**3.** FED.R.CIV.P. 24 applies in its entirety to bankruptcy adversary proceedings. Bankruptcy Rule 7024.

tracts. The test in Illinois is whether a contract was entered into for the direct benefit of a third person not a party to the contract. *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 178 N.E. 498 (1931). The parties to the contract must have manifested their intent to confer such a benefit on the third party. *Altevogt v. Brinkoetter*, 85 Ill.2d 44, 51 Ill.Dec. 674, 421 N.E.2d 182 (1981). The contract need not specifically refer to the third party by name so long as the contract confers a direct benefit on an identifiable class of which the proposed third-party beneficiary is a member. *Altevogt v. Brinkoetter*, 51 Ill.Dec. at 679, 421 N.E.2d at 187. Furthermore,

> Liability to a third party must affirmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution, and cannot be expanded or enlarged simply because the situation and circumstances justify or demand further or other liability.

*Ball Corp. v. Bohlin Building Corp.*, 187 Ill.App.3d 175, 177, 134 Ill.Dec. 823, 543 N.E.2d 106 (1989).

■ In the present case, with respect to the Purchase Agreement executed by Midway and Northwest, Aeron cannot demonstrate the requisite intent on the part of Midway and Northwest to make Aeron a third-party beneficiary of the Purchase Agreement. To the contrary, as Northwest points out, the Purchase Agreement specifically states that the parties did not intend to benefit any third parties:

> *No Third Party Beneficiary.* Nothing herein expressed or implied is intended to or shall be construed to confer upon or give to any person or corporation other than the parties hereto and their successors or permitted assigns any rights or remedies under or by reason of this agreement.

Purchase Agreement, § 11.4 (emphasis supplied). Furthermore, the Purchase Agreement makes no mention of Northwest assuming Midway's aircraft lease agreements with Aeron. These lease obligations form the basis for Aeron's motion to intervene.

Aeron claims that the "No Third Party Beneficiary" clause is boiler plate language and therefore cannot be dispositive on the issue whether Northwest and Midway intended to create a third party beneficiary relationship. Transcript dated December 23, 1993, at 37. This court assumes that the parties to the written agreement, Midway and Northwest, were competent sophisticated parties who intended their written contract to be a complete embodiment of their agreement. This assumption is confirmed by section 11.5 of the Purchase Agreement entitled *"Entire Agreement; Amendments,"* which states that the written Purchase Agreement is complete and can only be amended on written consent of the seller and buyer. Therefore, this court finds that neither Northwest nor Midway intended to confer a direct benefit upon Aeron by entering into the Purchase Agreement.

■ However, the court cannot decisively conclude at this stage of the proceedings that the Purchase Agreement is the only contract or the entire agreement at issue in the adversary proceeding involving Midway and Northwest. Count I of Midway's complaint, the breach of contract claim, refers to the "October 8th agreement." In fact, Midway alleges that "[t]he representations made by Northwest at the October 8th hearing and ratified in part in the Asset Purchase Agreement dated October 10, 1991, to which Debtors and Northwest agreed to be bound, and Phase I of which the Court approved pursuant to 363 and 365 of the [Bankruptcy] Code, constitute a binding contract supported by consideration." Complaint, at ¶ 30. Midway further alleges that "[a]t all times subsequent to the October 8th hearing, Debtors have been ready, willing and able to perform in accordance with the terms of the October 8th agreement." Complaint, at ¶ 31. Similarly, Midway refers elsewhere in the complaint to "Debtor's recommendation of Northwest's final offer at the October 8th hearing" and "the October 8th court-approved sale". Complaint, at ¶¶ 42–43. Thus, the court cannot restrict its anal-

ysis to the Purchase Agreement at this juncture.

 Aeron argues that statements made by counsel for both Midway and Northwest at the October 8th hearing before the Bankruptcy Court confirm that the parties intended Aeron to be a third-party beneficiary of the Midway/Northwest Agreement. That hearing was for a motion to approve the sale of 21 Midway Gates and related property to Northwest. Transcript dated October 8, 1991, at 5. Aeron cites a statement by Northwest's counsel referring to Northwest's intention to assume the lease contracts on seventeen DC–930s to support its claim that it was an intended third-party beneficiary. Transcript dated October 8, 1991, D–9, at 19. Aeron also cites a statement made by counsel for Midway suggesting that the Northwest deal would be preferable to the Southwest offer since "instead of 50 million liabilities [under Northwest's proposal], we would have all the Fidelcor [Aeron] liability, which could be another 25." *Id.* at 65–66. In addition to portions of the October 8th hearing cited by Aeron, the court notes that Midway's complaint indicated among the "terms of the revised Northwest bid as represented to and approved by the Court" that "Northwest would assume the lease contracts on Debtors' 17 DC–9–30 aircraft...." Complaint, at ¶ 8.

In light of the multiple references in the Complaint to the "October 8th agreement," the court cannot conclude that the Purchase Agreement is the only contract or the entire agreement at issue. Accordingly, Aeron has sufficiently shown an interest in the subject matter of the adversary proceeding because the court cannot say that Aeron would not be entitled to relief under any set of facts. *See Lake Investors Development Group, Inc.,* 715 F.2d at 1259.

### 3. *Impairment By Disposition of The Adversary Proceedings*

The potential for impairment of a proposed intervenor's interest in the subject matter of the adversary proceeding exists if:

the decision of a legal question would, as a practical matter, foreclose rights of the proposed intervenor in a subsequent proceeding; foreclosure is to be measured in terms of *stare decisis.*[4]

*Lake Investors Development Group, Inc.,* 715 F.2d at 1260 (citing *Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 683 F.2d 201, 204 (7th Cir.1982)).

 The bankruptcy judge held that Aeron's interest would not be impaired by the disposition of the primary action if Aeron's motion to intervene were denied. Transcript dated December 23, 1991, at 41–42. The bankruptcy judge disagreed with Aeron's contentions that Aeron would somehow be impaired by the application of doctrines of collateral estoppel or *res judicata* since those theories require that the party to be bound be a party to the prior litigation or in privity therewith. *Id.*[5] Furthermore, the bankruptcy judge noted that by denying the motion to intervene, Aeron would not be precluded from suing Northwest in a court of competent jurisdiction for the relief it seeks.

Northwest points out that Aeron does not contend that the outcome of this action would detrimentally impact any claims it has against Midway's estate under the aircraft lease agreements. Northwest argues that whether Midway wins or loses its action against Northwest, Aeron's potential claims against Midway for breach of its lease agreements remain viable. Therefore, Northwest concludes, resolution of the adversary proceeding will not impair Aeron's right to bring subsequent claims as a creditor against Midway's estate.

---

**4.** Black's Law Dictionary defines *stare decisis* as the "[p]olicy of courts to stand by precedent and not to disturb settled point." (citation omitted).

**5.** Although the mutuality rule has been discarded, collateral estoppel requires that one party or

that party's privy, the one against whom estoppel is attempted to be used, be identical in the second action. *People v. Buonavolanto,* 238 Ill. App.3d 665, 179 Ill.Dec. 677, 680, 606 N.E.2d 509, 512 (Ill.App. 1st Dist.1992).

Aeron argues that its interest could be impaired as a practical matter by the disposition of the adversary proceeding because although Aeron could bring a separate suit, it is unlikely that another fact finder would contradict a prior decision in the adversary proceeding. Aeron argues that an adverse decision on the issue of whether Northwest and Midway entered into an enforceable contract, while not dispositive on collateral estoppel grounds of Aeron's claim, will certainly impair that claim since the facts and the law are the same. Therefore, Aeron reasons, the practical effect of an unfavorable decision is "probable foreclosure" of Aeron's claim as a third party beneficiary. Aeron claims that this level of *stare decisis* is sufficient impairment to warrant intervention as of right.

Northwest cites *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201 (7th Cir.1982), where one joint venturer sued its co-joint venturer to dissolve the venture, and the Seventh Circuit held that the trial court had properly denied the motion to intervene as of right of the movants, who owned a share in the profits of the venture but were not themselves joint venturers. The *Meridian Homes* court explained that:

> Although a decision on the status of the joint venture may *affect* the interest of the [proposed intervenors] it would not have any preclusive effect on their asserted claim against [one of the joint venturers] and would not, therefore, impair their ability to protect their interest.

*Id.* at 204 (emphasis in original). However, the *Meridian Homes* court also reasoned that the potential intervenors' claim for breach of fiduciary duty against one of the joint venturers differed from the claims in the suit in which the movants sought to intervene involving dissolution of a joint venture. *Id.* at 205. In the instant case, on the other hand, Aeron asserts nearly the same claims that Midway has already asserted. Thus, although the legal principles set forth in *Meridian Homes* apply in the instant case, the facts are not exactly on point.

The court finds *National Union Fire Insurance Co. v. Continental Illinois Corporation*, 113 F.R.D. 532 (N.D.Ill.1986) more helpful. That case states that although impairment can occur through the operation of *stare decisis*, "a simple claim of potential *stare decisis* effect is not enough." *Id.* at 535. A potential intervenor "must show the presence of additional factors that would give the decision in these cases compelling persuasive force in [the movant's] later litigation." *Id.* (citation omitted). The *National Union Fire* court stated in *dicta* that a sufficient additional factor would be present when a proposed intervenor would be forced to present identical issues of law and fact to the same court in a later action. *Id.* In that case the court held that because any future presentation by the proposed intervenor would involve questions of Illinois law presented to an Illinois trial court, the degree of *stare decisis* would not hamper the assertion of a different position in state court. *Id.* The court concluded that any arguable practical impairment of the proposed intervenor's interest because of the *stare decisis* effect of the court's decision was minimal at best.

Accordingly, since no *res judicata* or collateral estoppel issues are present here, the court must determine whether Aeron has shown the presence of additional factors that would give the decision in the instant case compelling persuasive force in later litigation. In the instant case, Aeron's claims consist of breach of contract and fraud, state law claims which would be heard in state court unless federal court jurisdiction exists based on diversity of citizenship. Even if Aeron could sue Northwest in federal court, however, the "same court" would not preside since the instant action is proceeding before the bankruptcy court. The only other additional factor cited by Aeron as one that would have compelling persuasive force in later litigation is the fact that Bankruptcy Judge Squires, before whom the instant adversary proceeding is pending, was the judge presiding at the October 8, 1991 hearing during which the contract was allegedly formed or at least the terms of the alleged contract

between Northwest and Midway were discussed. The court does not believe that this factor standing alone would have overwhelming persuasive force in later litigation either in a state trial court or a federal district court. Hence any arguable practical impairment of Aeron's interest because of the *stare decisis* effect of the bankruptcy court's decisions is minimal at best.

### 4. *Adequacy of Representation By Existing Parties*

■ As to the final requirement for intervention as of right, this court agrees with Judge Squires' ruling on the adequacy of representation by existing parties. Judge Squires found that the trustee in bankruptcy adequately represents any and all possible creditors of Midway, including Aeron.

■ In determining whether the proposed intervenors' interest is adequately represented by the existing parties, the burden of proof on the party seeking to show lack of adequate representation is minimal. *Trbovich v. United States*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). However, "where it is established that the parties have the same ultimate objective in the underlying action, the intervenors must demonstrate, at the very least, that some conflict exists." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 205 (7th Cir. 1982) (citation omitted). In the instant case, Aeron and Midway share virtually identical interests in the outcome of this adversary proceeding since both seek to impose liability on Northwest for breach of contract and fraud. Aeron has advanced no conflict with Midway that would undermine Midway's ability to adequately represent Aeron's interests.

■ Aeron argues that its interests conflict with Midway's interests because the Trustee, as a fiduciary of the estate, is obligated to attempt to direct recovery into the estate. Aeron argues that if recovery goes to the estate, as opposed to Aeron directly based on a third-party beneficiary claim, that recovery may be diluted by claims of other creditors of the estate. Aeron then disputes the authority cited by the bankruptcy judge in support of his holding that the Trustee adequately represented Aeron's interest. The bankruptcy judge cited *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988), which held that a trustee in bankruptcy has a duty to bring claims on behalf of the creditors as a body. Aeron notes that *Koch* also emphasized that a trustee could not pursue independent claims of creditors:

> [T]he trustee has no standing to bring *personal* claims of creditors. A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause....

*Koch*, 831 F.2d at 1348 (emphasis in original). Finally, Aeron argues that when a prospective intervenor and a party to the lawsuit have independent and competing claims to a limited fund, the party to the suit cannot, as a matter of law, adequately represent the intervenor's interest. *Lake Investors*, 715 F.2d at 1261.

Although Aeron has correctly stated the law, it is misapplied to the facts of this case. Because other claimants have a similar interest in Midway's suit against Northwest for breach of contract and fraud, Aeron's claim is not "personal". Furthermore, Aeron and Midway do not have independent and competing claims to a limited fund. Both Aeron and Midway seek to find Northwest liable on a contract; no discrete, distinguishable fund exists here. The fact that the Trustee has a fiduciary duty to the estate does not render the claims of Midway and Aeron competing claims.

■ The court agrees with Northwest that in the bankruptcy context, where a trustee is appointed to administer a debtor's estate, the "conflict" described by Aeron will often exist, but this is insufficient to warrant intervention by each creditor. A Chapter 7 trustee is the designated representative of the debtor's estate and has capacity to sue for the benefit and protection of the creditors of the estate. 11 U.S.C. § 323. The trustee of a Chapter 7

debtor has the general duties of marshalling all available property, reducing it to money, distributing it to creditors, and closing up the estate. 11 U.S.C. § 704(1). "The trustee's single effort eliminates many wasteful and competitive suits of individual creditors." *Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339, 1342–43 (7th Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). A creditor challenging the adequacy of a bankruptcy trustee's representation bears a "heavy burden." *Id.* at 1353; *Heyman v. Exchange National Bank,* 615 F.2d 1190, 1194 (7th Cir.1980). "[H]istorically one of the prime purposes of the bankruptcy law has been to protect creditors of a bankrupt's assets; to protect the creditors from one another." *Young v. Higbee Co.,* 324 U.S. 204, 210, 65 S.Ct. 594, 597, 89 L.Ed. 890 (1945). Responding to attacks by individual creditors has been recognized as a difficult aspect of representing self-interested creditors. *Koch,* 831 F.2d at 1343. Aeron should not be allowed to by-pass the court-appointed trustee when the trustee has already raised the same claims against Northwest. Therefore, the court holds that Aeron's interests are adequately represented by the Trustee.

 The proposed intervenor's failure to fulfill any one of the requirements of Rule 24(a) would be sufficient to deny intervention as of right. *Meridian,* 683 F.2d at 205. Here the movant has not met two of the requirements because Aeron has not shown that any interest it has in the adversary proceeding between Midway and Northwest would be impaired and impeded by this litigation nor has Aeron shown that it is not adequately represented by the existing parties. Therefore, the bankruptcy court properly denied the motion to intervene as of right.

**B. *Permissive Intervention***

 Aeron seeks, in the alternative, to intervene via permissive intervention. Rule 24(b) provides that "[U]pon timely application anyone may be permitted to intervene in an action ... when an appli-

cants' claim or defense and the main action have a question of law or fact in common." Permissive intervention should be denied, however, "if it will unduly delay or prejudice the adjudication of the rights of the original parties" to the adversarial proceedings. Fed.R.Civ.P. 24(b); *Southmark Corp. v. Cagan,* 950 F.2d 416, 419 (7th Cir.1991). The bankruptcy court has discretion to decide whether a motion for permissive intervention should be granted. Fed.R.Civ.P. 24(b)(2). Accordingly, this court will only overturn the bankruptcy court's decision to deny Aeron's motion for permissive intervention if the bankruptcy court abused that discretion.

 Judge Squires, in a hearing December 23, 1991, carefully explained how and why the addition of Aeron to the proceedings before him would unduly delay and prejudice both Northwest and Midway. Although the claims of Aeron and Midway had common questions of law and fact, the bankruptcy judge decided not to exercise his discretion to permit intervention under Rule 24(b)(2) because Aeron's presence in the adversary proceeding would add to the legal or factual issues to be adjudicated. Transcript dated December 23, 1991, D–27, at 44–46. The bankruptcy judge thought it "in the Court's better exercise of its judicial discretion to keep this seminal lawsuit basically a two-party lawsuit for early resolution." *Id.* at 45. Since this court has already found that Aeron's rights as a creditor of Midway will not be adversely affected if intervention is denied and since Aeron's intervention would unnecessarily complicate the adversary proceeding, this court cannot say that Judge Squires abused his discretion in denying permissive intervention for the reasons he stated in open court.

**IV. CONCLUSION**

Although Aeron's motion to intervene as of right was timely and Aeron arguably has a direct and substantial interest in the subject matter of the adversary proceedings, the court agrees with the bankruptcy court that Aeron's rights will not be impaired by disposition of those proceedings

and any rights it may have are adequately represented by the existing parties. Failure to meet any one of the four criteria described in Rule 24(a)(2) warrants denial of a motion to intervene. Therefore, the bankruptcy court properly denied Aeron's motion to intervene as of right pursuant to Rule 24(a)(2). Furthermore, this court finds that the Bankruptcy Court did not abuse its discretion in denying Aeron's motion for permissive intervention pursuant to Rule 24(b)(2). Accordingly, the judgment of the Bankruptcy Court denying Aeron's motions to intervene as of right and for permissive intervention is affirmed.